Herman Rubin v. Commissioner.
Rubin v. Commissioner
Docket No. 29940.
United States Tax Court
1951 Tax Ct. Memo LEXIS 251; 10 T.C.M. (CCH) 369; T.C.M. (RIA) 51111; April 26, 1951
*251 Douglas D. Felix, Esq., Miami, Fla., for the petitioner. Ralph B. Bradbury, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income taxes for the fiscal year ended September 30, 1946, in the amount of $4,831.64 and a five per cent negligence penalty of $241.58. The petitioner alleges that respondent erred in determining that petitioner improperly failed to include in his income for the taxable year the sale of certain diamonds to Becker Brothers, New York, N. Y., for the sum of $7,500. At the conclusion of the trial in Miami, Florida, the Presiding Judge held for the petitioner. Findings of Fact Petitioner is the brother of Rose Ginsberg who, prior to her remarriage, was the widow of Morris Levin. Morris Levin, who was an attorney at law practicing in Paterson, New Jersey, died intestate in January, 1930. At the date of his death, Morris and Rose Levin had two children, Robert Levin, then about 11 years of age, and Herbert Levin, about 7 years old. Rose Levin owned the home in which the family lived, and at the date of his death Morris Levin had no real property. His personal *252 property consisted principally of a ring, several brooches, earrings, and other miscellaneous pieces of family jewelry which his mother had given him shortly before her death in 1924. Morris Levin kept this jewelry in his safe at his office in Paterson, New Jersey. It was enclosed in an envelope secured by an elastic band. A declaration was filed by the Surrogate of Passaic County, New Jersey, stating that so far as Rose Levin could discover, the value of her deceased husband's personal estate did not exceed the sum of $2,000. No inventory was ever filed for the estate and no formal administration was had. Upon being notified of Morris Levin's death, the petitioner Herman Rubin and his father William Rubin, who was also the father of Rose Levin, went to Paterson, New Jersey. At that time, petitioner and his father were living in Miami, Florida, where they were engaged in the jewelry and loan business under the firm name of William Rubin & Son. The safe in Morris Levin's office was opened by a locksmith in the presence of several persons, including Nathan Levin, decedent's brother, and William Rubin. The above-mentioned package of jewelry was delivered to Rose Levin. Shortly *253 after the funeral of Morris Levin, his widow, Rose Levin, stated that she would decide later what should be done with the jewelry and, pursuant to her request, Herman Rubin and William Rubin took the jewelry back to Miami and placed it in the safe of William Rubin & Son. Rose Levin remained in Paterson, New Jersey, for about a month after her husband's death. She then took her two sons and went to Miami to live. After arriving in Miami, Rose Levin decided that the jewelry should be held for her two sons and, accordingly, it continued to be kept in the safe of William Rubin & Son. William Rubin died in April, 1930, and thereafter Rose was employed to assist petitioner in the store of William Rubin & Son. She had access to the safe in which the jewelry was kept. The existence of the jewelry was mentioned from time to time in family circles and both Robert and Herbert Levin understood they were eventually to receive it, but no particular discussion of the jewelry was ever had with either of them prior to 1946. Robert Levin had graduated from college when World War II was declared. He was immediately taken into the service. Herbert Levin was allowed to continue in school for about *254 a year before entering the service. Robert and Herbert, both of whom had studied dentistry, decided to practice together in Miami, Florida. Robert, who was discharged from the service before Herbert, made the arrangements for opening their office. They began their partnership practice about September 15, 1946. The cost of opening this partnership office was between $10,000 and $12,000. Early in 1946, Rose Ginsberg, formerly Rose Levin, decided the time had come to sell the aforesaid jewelry so that the money could be used to help her sons finance their office. Petitioner, who is a watchmaker and diamond setter, then removed the diamonds from their mountings and placed them in a package. William Rubin & Son customarily kept jewelry, which had been pledged to secure the payment of loans, for a period of from 14 to 15 months after the loans became delinquent. When a sufficient amount of this unredeemed jewelry had accumulated and it seemed to be the right time to sell it, the diamonds were removed and sold separately from the mountings. These diamonds were not carried in the inventory of the business. There was no record of the Levin diamonds on the books of William Rubin & Son. *255 The Levin diamonds were mine-cut and they, as well as the Rubin diamonds, were removed from their settings because in that way a larger price could be obtained for them. In February, 1946, petitioner took two packages of diamonds to New York for sale. One of those packages contained diamonds which had been removed from jewelry pledged to William Rubin & Son, and the other package contained the Levin diamonds. He sold the Levin diamonds for $7,500 and the Rubin diamonds for $10,000. Both lots were sold to Becker Brothers and a single invoice was made out for $17,500. Petitioner caused payment to be made by two checks, rather than one, because one of the two lots belonged to the Levins. He turned the $7,500 check over to Rose Ginsberg and she delivered it to Robert Levin who deposited it in his personal account. Later, when a partnership account was opened for Robert and Herbert Levin, the $7,500 was transferred to that account. In February, 1946, Herbert Levin was stationed at Sheepshead Bay, Manhattan Beach, New York. When petitioner went to New York to sell the diamonds he called Herbert and suggested that he go with him to look for a purchaser. Herbert secured two days' *256 leave and accompanied petitioner. At that time, petitioner showed Herbert the package of Levin diamonds and told him they were the ones which were left by his father. Herbert was present when these diamonds and the Rubin diamonds were sold to Becker Brothers. The Levin diamonds were worth about one-third more in 1946 than they were in 1930. Herbert Levin did not report the sale of the Levin diamonds in his 1946 income tax return because he felt he had inherited them. Robert Levin did not report the sale in his 1946 income tax return because the accountant who prepared the return advised that the income was not taxable. From time to time when he visited his sister, Rose Levin, in New Jersey, petitioner made her gifts ranging from $50 to $100. Morris Levin did not owe petitioner any money at the date of his, Levin's death in 1930. Petitioner has no children of his own. He expects to leave a part of his estate to the Levin boys at his death. Petitioner had no beneficial interest in the Levin diamonds. The $7,500 he received from their sale was not his but belonged to his sister, Rose Ginsberg, and her two children, Robert and Herbert Levin. Opinion ARUNDELL, Judge: From *257 the foregoing Findings of Fact, it is clear that respondent erred in including in petitioner's taxable income for the year 1946 the sum of $7,500 received from the sale of the Levin diamonds. In view of this conclusion, the negligence penalty likewise fails. Decision will be entered under Rule 50.